Opinion issued July 6, 2007







 

 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06 -00516-CR






DOUGLAS A. SANCHEZ, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 182nd District Court

Harris County, Texas

Trial Court Cause No. 997747






MEMORANDUM OPINION


 A jury convicted appellant, Douglas A. Sanchez, of aggravated sexual assault
of a child and assessed punishment at confinement for life. In two points of error,
appellant contends (1) the trial court erred by admitting hearsay testimony, and (2)
appellant received ineffective assistance of counsel at trial. We affirm.

BACKGROUND

 Teresa H., the 13-year-old complainant's mother, called the cable company and
arranged to have someone come and install cable in her home on a Thursday evening
between 6 and 8 p.m. Teresa made the appointment in the evening because she
wanted to be home when the cable installer arrived. When Teresa arrived at home
that evening, she saw the cable installer in a red pickup truck driving away from her
home. Her children told Teresa that the cable man had left to get a drill. Shortly
thereafter, Teresa spoke to a customer service representative from the cable company
and told him that she needed to reschedule the installation because she needed to take
her son to the emergency room for a spider bite. Teresa rescheduled the installation
for the next day, which was her day off. 

 While Teresa was at the emergency room with her son, the cable man,
appellant, returned to the house and told the complainant's 10-year-old sister, C.S.,
that he was back to finish the cable installation. C.S. let appellant in the house. 
Appellant went into the attic for a short time, and then he went into Teresa's
bedroom, where 13-year-old N.M. was using the computer. 

 Appellant asked N.M. how old she was and if she had a boyfriend. N.M. told
appellant that she was 13 years old, and appellant said that she looked 18 years old. 
N.M. said that appellant's questions were "kind of weird" and made her feel
uncomfortable. After talking with N.M., appellant completed the cable installation.

 Appellant then asked N.M. to come outside with him to see where he was going
to put the cable to her brother's room. He then pulled down her panties, pulled down
his own underwear, and penetrated her both vaginally and rectally. Appellant told
N.M., "Don't tell nobody [sic] or I'll get in trouble."

 N.M. went back inside and went into the bathroom. Her sister, C.S., said that
N.M. was pulling down her skirt as she re-entered the house. Appellant followed
N.M. to the bathroom, knocked on the door, and asked her to sign his work order,
which she did. He then left.

 Teresa called and talked to her daughter while appellant was still in the house,
but N.M. was afraid to disclose the sexual assault at that time. However, after
appellant left, N.M. called her older brother, who was at her grandmother's house. 
N.M. told her grandmother that the cable man had "touched her." N.M.'s
grandmother and brother drove to the house, and Teresa arrived a short time later.

 Teresa took her daughter to the hospital, where a doctor performed a sexual
assault examination. N.M. had to be sedated for the exam. The doctor saw bruising
and a tear on N.M.'s hymen. The doctor stated that "[s]omething hit that area and
penetrated it to tear it." The doctor stated that the physical findings were consistent
with the sexual assault described by N.M.

 N.M.'s mother took her home and put her to bed. At around 9:00 a.m. the next
morning, appellant returned to the house, claiming that he needed to complete the
cable installation. Teresa heard him knocking on the front door and then on the
sliding glass door in the rear of the house. Teresa went outside, picked up a metal
pipe, and struck appellant on the arm.

 N.M. awoke to hear her mother yelling, "You raped my daughter." N.M. then
crawled to the bathroom and began vomiting. When the police arrived 10 to 15
minutes later, they found N.M. in the bathroom, still crying and vomiting. N.M. told
the police officer that the man outside--appellant--was the man who had raped her. 

EXCITED UTTERANCE

 In his first issue on appeal, appellant contends the trial court erred by
admitting, through Teresa's testimony, N.M.'s statement to the police identifying
appellant as her assailant. The State responds that N.M.'s statement was an "excited
utterance" under Texas Rule of Evidence 803(2).

The Testimony

 During trial, the following exchange took place between the prosecutor and
Teresa:

 [Prosecutor]: And how is her demeanor when she's talking to the police
officer? 


 [Teresa]: She could barely talk to them. They couldn't understand what
she was saying because she was so--she was still, I guess, having this
attack that she was having.


 [Prosecutor]: And could you understand what she was saying?


 [Teresa]: No, not really.


 [Prosecutor]: Was she able to get across her ideas of what she was trying
to say, though?


 [Teresa]: Yes, she did.


 [Prosecutor]: Is she constantly crying?


 [Teresa]: Yeah.


 [Defense Counsel]: Objection, Leading, Your Honor.


 [Trial Court]: Sustained.


 [Prosecutor]: Was she upset or not?


 [Teresa]: Yes, she was. It was like she was sick. She was like she was
just sick. She just was crying and she was --


 [Defense counsel]: Objection. Narrative, Your Nonor.


 [Trial Court]: Overruled. You can answer it.


 [Teresa]: She was crying and she was throwing up. She was like she
was so weak and just throwing up and trying to talk to the officers at the
same time to answer their questions.


 [Prosecutor]: So, what does she say?


 [Defense Counsel]: Objection to hearsay.


 [Trial Court]: Overruled.


 [Teresa]: The officers asked her to tell them what happened.


 [Prosecutor]: And does she?


 [Teresa]: She--yes, eventually she did get it out.


 [Prosecutor]: What does she say once she gets it out?


 [Teresa]: She told the officers that the man had raped her.


 [Prosecutor]: Does she tell them who's the man?


 [Teresa]: The man outside.


 [Prosecutor]: And that would be that defendant sitting over there?


 [Teresa]: Yes. 

Standard of Review and Applicable Law

 We review a trial court's determination of whether evidence is admissible
under the excited utterance exception for an abuse of discretion. Wall v. State, 184
S.W.3d 730, 743 (Tex. Crim. App. 2006). A trial court does not abuse its discretion,
and we will not reverse a trial court's ruling, unless the ruling was arbitrary or
unreasonable. Montgomery v. State, 810 S.W.2d 372, 378 (Tex. Crim. App. 1991)
(op. on reh'g).

 Hearsay is a statement, other than one made by the declarant while testifying
at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex.
R. Evid. 801(d). For hearsay to be admissible, it must fit into an exception provided
by a statute or the rules of evidence. Tex.R. Evid. 802. One such exception is rule
803(2), the excited utterance exception. An excited utterance is a statement relating
to a startling event or condition made while the declarant was under the stress of
excitement caused by the event or condition. Tex. R. Evid. 803(2). The exception
is based on the assumption that the declarant is not, at the time of the statement,
capable of the kind of reflection that would enable the declarant to fabricate
information. Apolinar v. State, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). 

 In determining whether a hearsay statement is an excited utterance, the court
may consider (1) the length of time elapsing between the event and the statement, (2)
the nature of the declarant, (3) whether the statements were in response to a question,
and (4) whether the statements were self-serving. Apolinar, 155 S.W.3d at 187. 
However, the critical determination is "whether the declarant was still dominated by
the emotions, excitement, fear, or pain of the event" or condition at the time of the
statement. Zuliani v. State, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003) (quoting
McFarland v. State, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)).

Analysis

 Appellant argues that too much time had passed between the rape and H.M.'s
statement to police for her identification of appellant as her assailant to have been an
"excited utterance." However, appellant's argument rests on the erroneous
assumption that the rape was the exciting event.

 Here, the record shows that N.M. was upset because she awoke to find that her
assailant had returned to her home, and that her mother was confronting him,
screaming "You raped my daughter," and beating him with a pipe. Thus, the exciting
event was not the rape, but appellant's return to N.M.'s home the next day. 

 The nature of the declarant factor requires us to consider that, at the time she
made the statement, N.M. was 13 years old, had just seen her mother confront the
man who had raped N.M. the day before, and she was crying and vomiting because
she was so upset.

 Although N.M.'s identification of appellant was made in response to
questioning by police officers, it is not dispositive that the statement is an answer to
a question or that it was separated by a period of time from the startling event. 
Zuliani, 97 S.W.3d at 596. Here, only 10 to 15 minutes had passed from the time that
N.M. discovered that appellant had returned. Further, at the time she made the
statement, N.M. was still crying and vomiting. 

 Nothing in the record suggests that N.M.'s statement was self-serving.

 Under these facts, we cannot say the trial court erred in concluding that N.M.'s
statement was "still dominated by the emotions, excitement, fear, or pain" she
experienced upon discovering that her assailant from the night before had returned
to her home. 

 Accordingly, we overrule issue one.

INEFFECTIVE ASSISTANCE OF COUNSEL

 In issue two, appellant contends that he received ineffective assistance of
counsel at trial. Specifically, appellant contends that his counsel should have
objected when one member of the Houston Police Department Crime Lab [ "the HPD
lab"], testified about work performed by another lab employee, who had since
resigned. (1) Appellant argues that he was denied his 6th Amendment right to cross-examine the employee who had resigned because his trial counsel did not object to
object to testimony about her work. 

Background

 During the guilt-innocence phase of appellant's trial, Reidun Hilleman, a
quality assurance specialist with the HPD lab, testified about recent improvements in
the lab's procedures. She stated that the lab is not accredited to do DNA analysis, but
that it does preliminary screening tests for bodily fluids such as semen on clothing. 
If such fluids are found, the HPD lab then sends the material to a private lab for DNA
testing.

 Hilleman testified that she was not the person who conducted the initial
screening in this case, but that Audrey Tims, who had resigned from the HPD lab,
screened the evidence in this case, determined that it contained bodily fluids, took
cuttings from N.M.'s panties, and sent them to Identigene, a private lab, for further
DNA testing. The DNA testing showed the presence of appellant's DNA on the
cuttings that Tims took from N.M's panties.

 However, because Tims was unavailable to testify, the HPD crime lab sent all
of the evidence to Identigene for retesting. Robin Guidry, a senior forensic CNA
analyst at Identigene, testified that she performed another screening test on N.M.'s
panties, which was positive for semen, so she ordered that another full DNA test be
performed. The retest showed the presence of N.M.'s DNA, as well as that of an
unknown female--no male DNA was present, despite the fact that the screening test
was positive for semen.

 Suspicious because of the presence of unknown female DNA and no male
DNA, Guidry determined that Identigene had accidentally switched the samples that
were tested. Therefore, she decided to test the panties for a third time. She
personally took cuttings from N.M.'s panties , performed a full DNA analysis, and
confirmed the presence of appellant's DNA on N.M.'s panties. (2)

Standard of Review and Applicable Law

 To show ineffective assistance of counsel, a defendant must demonstrate both
(1) that his counsel's performance fell below an objective standard of reasonableness
and (2) that there is a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different. Strickland v.
Washington, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064, 2068 (1984);
Andrews v. State, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). A defendant has the
burden to establish both of these prongs by a preponderance of the evidence, and a
failure to make either showing defeats his ineffectiveness challenge. See Mitchell v.
State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

 Our review of appellant's trial counsel's performance must be highly
deferential. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. We determine the
reasonableness of counsel's challenged conduct in context and view it as of the time
of the conduct. Id. at 690. We are to assume a strategic motive if any can be
imagined and find counsel's performance deficient only if the conduct was so
outrageous that no competent attorney would have engaged in it. Bone v. State, 77
S.W.3d 828, 833 n. 13 (Tex. Crim . App. 2002), citing Garcia v. State, 57 S.W.3d
436, 440 (Tex. Crim. App. 2001). Generally, an isolated failure to object to certain
procedural mistakes or improper evidence does not constitute ineffective assistance
of counsel. Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). 

 In most cases, the undeveloped record on direct appeal will be insufficient to
satisfy the dual prongs of Strickland because the reasonableness of counsel's
decisions often involves facts not appearing in the appellate record. Rylander v. State,
101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Therefore, it is usually critical that the
defendant obtain the necessary record in the trial court to rebut the Strickland
presumption that counsel's conduct was strategic. Thompson v. State, 9 S.W.3d 808,
814 (Tex. Crim. App. 1999); McCullough v. State, 116 S.W.3d 86, 87 (Tex.
App.--Houston [14th Dist.] 2001, pet. ref'd). This kind of record is best developed
in a hearing on a motion for new trial or by application for a writ of habeas corpus. 
See Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998).

Analysis

 Appellant argues that his trial counsel should have objected when HPD lab
employee Hilleman testified about the preliminary DNA screening done by Tims,
who had since resigned. However, appellant cannot meet either prong of the
Strickland test.

 Under prong one, appellant cannot rebut the presumption that counsel's
decision not to object to Hilleman's testimony was trial strategy. The record shows
that the trial judge indicated that if appellant questioned the validity of the DNA
testing, she might allow the State to ask questions about an independent DNA study
that the defense had performed. Thus, there was a plausible, tactical reason for
defense counsel to refrain from objecting to Hilleman's testimony.

 Under prong two, appellant cannot show that, but for counsel's failure to object
to Hilleman's testimony about Tims's work, the result of the proceeding would have
been different. The record shows that Identigene performed the DNA testing "from
ground zero" after Tims resigned, including the preliminary test for semen that Tims
had performed. Even if testimony about Tims's work on the case had been excluded
entirely, the State could have proceeded with the evidence that it had independently
obtained from Robin Guidry of Identigene.

 Because appellant failed to meet either prong of the Strickland test, we overrule
issue two.

CONCLUSION

 We affirm the judgment of the trial court.



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Do not publish. Tex. R. App. P. 47.2(b).
1. ' 
 
2. 
 ' 
 ' 
 
 -
 " 
 " 
'